# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DAVID MUELLER,

    Plaintiff,

v.

CITY OF JOLIET; BRIAN BENTON, in his official and individual capacity as the CHIEF OF POLICE; and EDGAR GREGORY, in his individual capacity,

    Defendants.

Case No. 17 C 7938

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

The Plaintiff, employed as Sergeant of Operations for the City of Joliet Police Department, is a member of the Illinois National Guard. On March 23, 2016, Plaintiff received deployment orders from the National Guard that required him to report for active full-time duty to the Illinois National Guard Counter Drug Task Force. The orders were executed by Richard J. Hayes, Jr., the State Adjutant General on behalf of the Governor of Illinois. (Although the full-time duty period was designated as from May 9, 2016 to September, 30, 2016, Plaintiff only served until August, 1, 2016, when he resigned and returned to full-time status with the Police Department.) Plaintiff duly

informed his superiors at the Police Department of his orders, but was advised that he only qualified for "unpaid leave of absence" and he would have to use benefit time for his military service and would "not continue to accrue leave time, such as vacation or personal days." The effect of this "unpaid leave" decision was to reduce Plaintiff's compensation during the leave to his pay as a member of the National Guard which was less than his pay as Sergeant of Operations.

As a result of the forgoing denial of paid leave, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights. His charge was subsequently dismissed and he received a notice of right to sue. He thereafter filed this two-count Complaint alleging violations of the Uniformed Service Members Employment and Reemployment Act (the "USERRA"), 38 U.S.C.A. § 4311 (Count I), and the Illinois Military Leave of Absence Act (the "IMLAA"), 5 ILCS 325/1 (Count II). He has named as Defendants, the City of Joliet (the "City"), Brian Benton, Chief of Police in his official and individual capacity, and Edgar Gregory, Deputy Chief of Police in his individual capacity. Federal jurisdiction is based on Count I, while jurisdiction of Count II is based on supplemental jurisdiction.

Defendants have filed a Motion to Dismiss contending that neither of these statutory provisions apply to Plaintiff's claim

because his service in the Illinois National Guard's Counter Drug Task Force was purely a function of state law. They also contend that, should the Court find that the City is obligated for the differential pay as claimed under IMLAA, the City is excused from complying because the increased costs resulting from IMLAA's required paid leave would run afoul of the Illinois State Mandates Act, 30 ILCS 805/8(a). This act prohibits the imposition of unfunded mandates such as alleged to be the case here because the legislature had not provided funding for IMLAA claims. In response, Plaintiff argues that these two statutes apply to individuals who are called to "full-time national guard duty" and, accordingly, Plaintiff is entitled to their protection. For the reasons stated herein, the Court finds that USERRA does not apply to Plaintiff due to the fact that he was in state service while on active duty and that the Court will not exercise supplemental jurisdiction with respect to Count II, IMLAA.

## II. **THE NATIONAL GUARD**

The Army National Guard, originally referred to as the militia, predates the founding of the nation and has been a standing national military for almost 150 years. Following its key role during the Revolutionary War, the militia was enshrined in the Constitution as a fundamental component of our national

defense.  Since the enactment of the Constitution, a variety of statutes have been enacted that define the Militia's (or Guard's) role in our nation's affairs.  While federal regulations dictate much of the Guard's organization and function, the control of Guard personnel and units is divided between the federal government and the states.  Most of the provisions governing the Guard's federal mission are contained in Title 10 U.S.C.A. which authorizes the President to federalize the National Guard.  The purposes for federalization include augmenting the active armed forces in time of war, assisting in the handling of national emergencies such as hurricane relief, suppressing insurrections, and elimination of unlawful obstructions which seek to prevent the enforcement of federal law in any state or territory.  *National Guard Fact Sheet Army National Guard (FY2005)* https://web.archive.org/web/20120812205138/http://www.arng.army.mil/SiteCollectionDocuments/Publications/News%20Media%20Factsheets/ARNG_Factsheet_May_06%20ARNG%20fact%20Sheet.pdf, at 3. (Last visited April 30, 2018).

An important limitation on the federal use of the National Guard is the Posse Comitatus Act, 18 U.S.C.A. § 1385 ("PCA").  This Act prohibits the use of the Army or Air Force in the execution of criminal laws of the United States.  The PCA only

applies to the National Guard when it is placed in federal service as part of the Army or Air Force, and does not apply to the National Guard when it is in its militia status, *i.e.,* under state control. *Memorandum Opinion of Douglas W. Kmiec, Assistant Attorney General Office of Legal Counsel, April 4, 1989.*

When the National Guard units are not under federal control, the Governor is the commander-in-chief of the respective state units and may act through his designee, such as the State Adjutant General in Illinois. The Governor can mobilize National Guard personnel to state active duty for training orders, and for non-combat purposes such as humanitarian missions in response to disasters, counterdrug operations, peacekeeping or peace enforcement missions, maintenance of vital public services, and participation in engineering projects. *National Guard Fact Sheet Army National Guard (FY2005)*, at 4.

### III. DISCUSSION

#### A. Count I - USERRA

Now, turning to Plaintiff's Complaint, no where does he allege that his National Guard unit had been federalized at the time of his call up. To the contrary, his call to duty came from the State Adjutant General who is the state official given

the authority to mobilize the state national guard in its militia form.  The order came from the Department of Military Affairs State of Illinois and was signed by Richard J. Hayes, Jr., Major General, The Adjutant General.  The authorization was for "full-time National Guard Duty for Counterdrug (FTNG-CD)" (the latter acronym meaning "Full Time National Guard-Counter Drug").  (*See,* Exhibit A to Defendants' Motion to Dismiss.) There is no indication that the President of the United States had anything to do with the issuance of this order and Plaintiff has suggested none.  Instead, Plaintiff argues that he was called to "full time status" and the federal government is paying for at least some of the costs associated with this order.

However, if, in fact, Plaintiff had been called in to federal service for enforcement of drug laws, such call up would appear to be in violation of the Posse Comitatus Act and also in violation of the federal funding law, 32 U.S.C.A. § 112 (A)(1), which allow the National Guards to participate in drug interdiction programs only "while not in federal service."  *See, United States v. Hutchings,* 127 F.3d 1255, 1258 (10th Cir. 1997).  *Accord, United States v. Benish,* 5 F.3d 20, 26 (3rd Cir. 1993).  Plaintiff criticizes the citation of these cases as being just "federal criminal law."  However, these cases each

involve evidence obtained by the National Guard while on drug interdiction duty to which motions to suppress were filed by defendants based on the contention that the evidence was seized in violation of the PCA.  In each case, the motion to suppress was denied because of the lack of federal involvement, *i.e.,* the drugs were seized by Guard members while in state service. Surely the federal government would not involve itself in a criminal drug investigation in possible violation of the PCA, and risk suppression of any evidence seized.

Next we have to determine whether the provisions of 38 U.S.C.A. § 4311 ("USERRA"), under which Plaintiff's Count I relies, apply to him even though he was not in federal service. This statute, entitled "Discrimination against persons who serve in the uniformed services and acts of reprisal prohibited," makes it illegal for an employer to discriminate against an employee who performs services in a "uniformed service." Plaintiff argues that by refusing him paid leave Defendants have violated this federal statute.  Defendants argue that this statute does not apply to Plaintiff because he was not in a "uniformed service" as the same is defined in federal law. Uniformed Service is defined as excluding a tour of duty while under state control and not under federal control.  Defendants

are correct: 20 C.F.R. § 1002.57(b) issued by the United States Department of Labor states as follows:

> National Guard service under authority of State law is not protected by USERRA. However many states have laws protecting the civilian job rights of National Guard members who serve under State orders. Enforcement of those State laws is not covered by USEERA or these regulations.

Because Plaintiff's tour of duty was clearly under the authority of the State of Illinois, USERRA has no applicability to his case.

Plaintiff objects to the use of a Rule 12(b)(6) motion to decide this case on its merits. However, this type of motion is a proper vehicle to dispose of a case that is not plausible on its face. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). While Plaintiff need not plead facts in his Complaint to support his claim, he must plead sufficient factual content to draw a reasonable inference that Defendants are liable for the alleged misconduct. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). He has failed to so here.

Since Count I relies solely on USERRA, the Motion to Dismiss Count I is granted.

### B.  Count II - IMLAA

Since federal jurisdiction was based on USERRA in Count I, jurisdiction over Count II, IMLAA, is based on supplemental

jurisdiction. The Court declines to exercise jurisdiction, neither to determine the applicability of the IMLAA to Plaintiff's case nor to determine the applicability of the State Mandates Act to IMLAA. Count II is therefore dismissed for lack of federal jurisdiction.

## IV. <u>CONCLUSION</u>

For the reasons stated here herein, Defendants' Motion to Dismiss Count I is granted. Count II dismissed for lack of federal jurisdiction.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　United States District Court

Dated: 5/2/2018