IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID MUELLER,

    Plaintiff,

  v.

CITY OF JOLIET, *et al.*,

    Defendants.

Case No. 1:17-CV-7938

Judge Harry D. Leinenweber

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff DAVID MUELLER, through his undersigned counsel, respectfully submits his Response/Reply to Defendants' combined Response to Plaintiff's Motion to Reconsider and Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 43). Defendants have attempted to thoroughly confuse what is a very simple issue, which is that Plaintiff has pled that his orders were under federal authority, because they were under Title 32, wherein he was ordered to "Full-Time National Guard Duty," which is covered under USERRA. *See* Exhibit 1, Declaration of Colonel Roth. The plain language of USERRA offers protection for "Full-Time National Guard Duty." USERRA does not carve out an exception for Full-Time National Guard Counter Drug ("FTNGD-CD") as not being protected. Defendants are hanging their argument on the assertion (1) that USERRA's definition of "uniformed services" does not mean what it clearly says, which is that it includes "full-time Nation Guard Duty," and (2) that Congress intended to exclude this one kind of FTNGD, Counter-Drug duty ("FTNGD-CD") from USERRA protection, which it did not. While FTNGD-CD is in State service, under the command/control of the Governor, just like ***all*** FTNGD (and thus ***all*** Title 32 duty and training), it is under Federal authority, which is distinct from service (whether Federal or State). Defendants attempt to confuse and intertwine "Federal *authority*" with "Federal service," which

are not the same. Plaintiff's orders were under Federal authority, Title 32, and therefore protected by USERRA. Title 32 is clearly within the definition of "uniformed services" under USERRA, and Defendants cannot point to any authority or support for their argument, either in statute or case law, because it does not exist. As such, Defendants' motion to dismiss must be denied for the reasons stated herein.

## I. LEGAL STANDARD

Defendants argue that Plaintiff's Amended Complaint should be dismissed because "Plaintiff cites to a handful of alleged 'facts' (which could have been introduced prior to this Court's May 2 decision), along with several statutory and regulatory citations that he neglected to mention during the briefing of the Defendant's original Motion to Dismiss." (Dkt. 43 at 3.) Defendants ignore the fact that this Court did not dismiss Plaintiff's Complaint with prejudice, and pursuant to Fed. R. Civ. P. 41(a)(2), the dismissal was without prejudice. Defendants do not even mention Rule 41 in their motion. (*See* Dkt. 43.) Defendants' motion to dismiss also ignores this Court's Order granting Plaintiff leave to file his First Amended Complaint ("FAC") (Dkt. 35). Courts allow plaintiffs to add facts to complaints all the time when amending the complaint. *See Gethers v. iQor, Inc.*, No. CIV.A. 2:10-2763, 2011 WL 1118519, *3 (D.S.C. Mar. 2, 2011), *report and recommendation adopted as modified*, No. 2:10-2763-RMG-BHH, 2011 WL 1099840 (D.S.C. Mar. 24, 2011) (denying defendants' motion to dismiss and giving the plaintiff leave to amend her complaint to include whether her service was performed pursuant to federal, rather than state, authority").

This Court's order granting Defendants' prior motion to dismiss was not a final order, and therefore Rule 54(b) applies, not Rule 59. *See Everett v. Leading Edge Air Foils, LLC*, No. 14-C-1189, 2017 WL 2894135, *3 (E.D. Wis. July 7, 2017); *see also U.S. for Use & Ben. of A. Hollow Metal Warehouse, Inc. v. U.S. Fid. & Guar. Co.*, 700 F. Supp. 410, 411–12 (N.D. Ill. 1988); *see*

*also Everett v. Leading Edge Air Foils, LLC*, No. 14-C-1189, 2017 WL 2894135, at *3 (E.D. Wis. July 7, 2017) ("[T]he legal standards applicable to a motion under Rule 60(b) do not apply to the plaintiff's motion for reconsideration."), cited by Defendants. Defendants' citation to *City of Chicago v. Sessions*, No. 17 C 5720, 2017 WL 5499167, *2 (N.D. Ill. Nov. 16, 2017), where this court entered a final judgment, denying a motion for preliminary injunction, is inapposite because here there was no final judgment. *See id.*

## II. PLAINTIFF'S TITLE 32 ORDERS ARE COVERED UNDER THE PLAIN LANGUAGE OF USERRA

Defendants ignore the clear allegations in Plaintiff's First Amended Complaint that his orders were pursuant to Federal authority, (Dkt. 36, e.g., ¶ 32 ("Plaintiff's military deployment orders were under Federal authority, and thus, covered under USERRA."), ¶ 33 ("Plaintiff was paid solely through the Federal government for his deployment in the FTNGD-CD.")), and the plain language of USERRA that Full-time National Guard Duty is protected. *See* Exhibit 1, Declaration of Colonel Roth ¶ 11 ("It is considered well-settled within the military legal community that any and all forms of National Guard duty and training under Title 32, U.S.C. confers protections under USERRA."). As such, Defendants' motion to dismiss should be denied. *Gethers*, 2011 WL 1118519, at *3 ("If the plaintiff claimed to have performed federal National Guard Service but needed only the occasion to prove it, then discovery would be in order. She has made no claim either way, at pleading or on brief.").

Because Defendants' response attempts to confuse the issue, let's go back to the basics of why Plaintiff's orders are protected by USERRA:

> (a) A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service ***in a uniformed service*** shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311. "Uniformed service" is defined in the definitions section of USERRA as:

(13) The term "service in the uniformed services" means the performance of duty on a voluntary or involuntary basis in a uniformed service under competent authority and includes active duty, active duty for training, initial active duty for training, inactive duty training, *full-time National Guard duty. . . .*"

(16) The term "uniformed services" means the . . . Army National Guard and the Air National Guard when engaged in active duty for training, inactive duty training, or *full-time National Guard duty. . . .*"

38 U.S.C. § 4303. The statute does *not* say full-time National Guard duty, *except* when performing duty in the Full-time National Guard Duty Counter Drug unit ("FTNGD-CD"). Plaintiff's orders clearly state: "You are ordered to Full Time National Guard Duty." (Dkt. 35 ¶ 31.) Full-time National Guard Duty is covered under the definitions of "uniformed services" under USERRA.

Plaintiff also alleges in his FAC (Dkt. 35) that "Plaintiff's Orders clearly state he was on full-time National Guard duty Counter-Drug (FTNGD-CD), under the authority of Title 32, U.S.C., Subsections 112 and 502(f)" (¶ 31), that "Plaintiff was paid by the United States Army, through the Federal government and Federal authority, for this Title 32 duty" (¶ 35), and that "Plaintiff was paid for his military service for the entire time through the federal government" (¶ 36). USERRA protects all Title 32 orders under the plain language of the Act, and does not carve out an exclusion for Title 32 FTNGD-CD Orders. In fact, if Plaintiff's orders were under State authority, his orders would read "SAD" – State Active Duty – and not Title 32. *See, e.g.,* Christopher R. Brown, May-2008 ARMY LAW at 34 ("National Guard members serving in SAD status are protected by state liability laws. In the alternative, state controlled National Guard members serving in a Title 32 status are covered by the provisions and protections of the Federal Tort Claims Act."). In addition to the Chart that was attached to Plaintiff's motion (Dkt. 33-2[1]), another simple explanation of the distinctions between SAD, Title 32 Full-time National

---

[1] Defendants argue that the Court should not consider the Chart of Comparison of Duty Statuses for National Guard Personnel (Dkt. 32-2) because it is unauthenticated (Dkt. 43 at 14). However, the Chart is cite din the "Military Justice in the National Guard: A Survey of the Laws and Procedures of the States,

Guard, and Title 10 Active-Duty can also be found at https://www.ngaus.org/sites/default/files/Guard%20Statues.pdf, *see* Exhibit 2 attached hereto. "Full-time National Guard Duty" has a distinct meaning, and is set forth in Title 32. "Title 32 allows the Governor, with the approval of the President or the Secretary of Defense, to order a member to duty for operational Homeland Defense activities in accordance with the following sections of U.S. Code (USC): 32 USC 502(f). . . ." *Id.*[2] Defendants concede, as they must, that "In 2006, 'other duty' was again expanded to encompass '[s]upport of operations or missions undertaken by the member's unit at the request of the President or Secretary of Defense,'" and that "all of the aforementioned Title 32 duties are federally authorized, in the sense that when a National Guard member is ordered to attend training or perform homeland security duties, he is doing so under 'Federal authority,' *i.e.*, pursuant to a legal obligation imposed by federal law." (Dkt. 43 at 7, citing 32 U.S.C. § 502(f)(2)(A).) Based on this concession, it is mind boggling how Defendants can then argue that Plaintiff's orders were not under federal authority, when the orders themselves reflect not only Title 32, but Section 502(f), which as set forth above and herein, is clearly under Federal authority, and not State authority. To suggest that any orders, including Plaintiff's orders, to "Full-time National Guard Duty" (FTNGD) do not fall under USERRA, not only contradicts the plain language of USERRA, but would deprive all other 1.1. million National Guard service members, who could be called at any time to Full-time National Guard Duty, protection under

---

Territories, and the District of Columbia," The Army Lawyer. December 2007, 30, Appendix C, at p. 66. *See* Exhibit 1, Declaration of Colonel Roth ¶ 13.

[2] Even Wikipedia explains that "Title 32 activation can only be done **by the President or SECDEF** with the approval and consent of the state Governor," https://en.wikipedia.org/wiki/National_Guard_of_the_United_States, thus, under Federal authority. As such, it is hard to understand how Defendants can claim such ignorance to the fact that Title 32 orders are under Federal authority. The reason for the dearth of case law on the issue (*see* Dkt. 43 at 6, arguing that "the absence of decisions addressing the interplay between 32 U.S.C. § 112 and USERRA suggests that this issue will not frequently arise in the future") is because it is clear that Title 32 orders are covered under USERRA, as "Full-time National Guard Duty" is specifically defined as part of the "Uniformed Services" that are protected, and as such, no one is making such an argument to the contrary except for Defendants here, which is either out of ignorance or intentionally to mislead the Court to misapprehension.

USERRA. To carve out an exception in this instance would also deprive volunteer service members of protections that were intended under USERRA, and dissuade them from service. It is these service members that have, for example, assisted civilian law enforcement agencies in seizing $8.4 billion worth of illicit drugs, supported 24,880 cases nationwide, and contributed to dismantling more than 2,866 drug trafficking organizations just in 2015. *See* Exhibit 1, Declaration of Colonel Roth. As is clear from the amendments to USERRA and other related statutes, it was the intent of Congress to protect these military service members to ensure a volunteer ready reserve to protect us and Our Nation.

### A. USERRA Protects <u>All</u> Title 32 Orders Under the Plain Language of the Act, And Does Not Carve Out An Exclusion for Title 32 FTNGD-CD Orders

Defendants go to great lengths to try to confuse the Court, or it shows Defendants fundamental lack of understanding of how the United States Military works for National Guard Members. Defendants' argument boils down to Defendants trying to suggest that Title 32 full-time National Guard Duty Counter Drug ("FTNGD-CD") duty is somehow different from all other Title 32 FTNGD and is excluded from coverage under USERRA, despite the plain language of USERRA, wherein the statute provides that "Full-Time National Guard Duty" is protected under USERRA. 38 U.S.C. § 4303.

Defendants concede that all other FTNGD is covered by USERRA, but try to argue that somehow the language in 32 U.S.C. § 112, under either subsection (a) or (g), excludes FTNGD-CD from the definition of "service in the uniformed services." Defendants cite no authority supporting this position. Congress' statutory language in 38 U.S.C. § 4303(13) and (16) are absolutely clear: "service in the uniformed services" includes "full-time National Guard duty," 38 U.S.C. § 4303(13), and the term "uniformed services" includes "the Army National Guard . . . when engaged in . . . full-time National Guard duty. . . ." 38 U.S.C. § 4303(16). There is ***no*** statutory language qualifying or differentiating types of FTNGD, and as such, this Court cannot

and should not carve out an exception at Defendants' suggestion that one exists, when it does not. There is also no case law supporting the argument that USERRA distinguishes between certain types of FTNGD and others. Exhibit 1, Declaration of Colonel Roth. Simply put, Defendants are wrong. There is no statutory language or case law supporting Defendants' argument that Congress intended to "carve-out" an exception for FTNGD-CD from the rest of FTNGD and exclude it from USERRA protection. As such, Defendants' motion must be denied.

### B. *Plaintiff's FTNGD-CD Is Under Federal Authority*

Defendants argue that "local law enforcement drug enforcement activities that are federally funded pursuant to 32 U.S.C. § 112 are not protected by USERRA, because they are not in 'Federal service' and do not fall under 'Federal authority.'" (Dkt. 43 at 5.) "Federal service" and "federal authority" are two very different things. Despite Defendants attempts to suggest otherwise, 32 U.S.C. § 112 is not just a funding mechanism to funnel money to the States for this purpose. Title 32 authorizes "under regulations prescribed by the [United States] Secretary of Defense" for National Guard personnel "to be ordered to perform full-time National Guard duty under section 502(f). . . . for the purpose of carrying out drug interdiction and counter-drug activities." 32 U.S.C. § 112(b)(1); *see also* Exhibit 1, ¶ 7. Section 112(b)(1) provides that Plaintiff's FTNGD-CD is prescribed by federal authority. There is no mention in § 112 that such personnel are somehow different from other FTNGD personnel for USERRA coverage. Absent a clearly stated Congressional intent to carve out FTNGD-CD personnel, there is no basis for a court to do so. Plaintiff was in FTNGD, therefore he was serving in the "uniformed services" as defined in 38 U.S.C. § 4303(13) and (16), therefore he is to entitled USERRA protection.

If Plaintiff had been ordered pursuant to State Active Duty ("SAD") then his orders would have said so and reflected "SAD", which they do not. The orders specifically states that Plaintiff was ordered to Full-time National Guard Duty (FTNGD) under Title 32, which is specifically

7

covered by USERRA. It is impossible to square Defendants' arguments with the plain language of USERRA that states that "Full-time National Guard Duty" is protected under USERRA.

### C. *Federal Authority v. Federal Service Explained*

Defendants are sowing confusion by not acknowledging the basic structure of the United States Military and how the National Guard fits into it. Major Brown's article, Christopher R. Brown, May-2008 ARMY LAW, discusses it. *See also* x. 1. When a person joins the National Guard, he/she is joining two separate and distinct military organizations, at the same time: (1) the State Army or Air National Guard (the Militia), commanded by the Governor, and (2) the Army or Air National Guard of the United States, a reserve component of United States Army or United States Air Force, commanded by the President. 10 U.S.C. §§ 10101, 10105. A National Guard officer receives two commissions: one from the Governor as a State Militia officer, another from the President as a Reserve Officer of the Army or Air Force. *See also* 20 ILCS 1805/40.

As Major Brown's article points out, when the National Guard is in State service, it is either performing training or "other duty" under Title 32, or it is in State Active Duty ("SAD") status. In those statuses, in State service, the Governor commands the National Guard, but when it is in Title 32 status, which is the case here, it is still under Federal authority, as there are Federal laws and rules that restrict the State National Guard's activities. If Plaintiff was ordered in a SAD status, Plaintiff would not be covered by USERRA because it would not be under federal authority. *See also* 20 C.F.R. § 1002.57 ("(a) National Guard service under Federal authority is protected by USERRA. Service under Federal authority includes active duty performed under Title 10 of the United States Code. Service under Federal authority also includes duty under Title 32 of the United States Code, such as active duty for training, inactive duty training, or ***full-time***

*National Guard duty*.") (emphasis added). Plaintiff was ordered to "full-time National Guard duty," under the authority of Title 32, which is pursuant to federal authority, and not SAD.

"Federal service" is distinct from "Federal authority." When the National Guard is in "Federal service," it is on "active duty" under Title 10, in its status as part of the National Guard of the United States, a reserve component of the United States Armed Forces. *See generally* 10 U.S.C. §§ 10101, 10105, 12301. When the National Guard is not on active duty, it is serving the Governor, in State service. *See, e.g.,* 10 U.S.C. § 10107 ("Army National of the United States; status when not in Federal service. . . .").[3] The "Army National Guard is defined under Federal law as the federally recognized State militia: 'the organized militia of the several States . . . active and inactive, that - (A) is a land force; (B) is trained, and has its officers equipped, under the sixteenth clause of section 8, article I, of the Constitution; (C) is organized, armed, and equipped wholly or in part at Federal expense; and (D) is federally recognized.'" 10 U.S.C. § 101(c)(2); *see also* 32 U.S.C. § 101(4) for an identical definition.

In accordance with its Constitutional authority, Congress has established that the military policy of the United States is critically dependent on the State National Guard. It "is essential that the strength and organization of the Army National Guard and the Air National Guard [defined in both Title 10 and Title 32 as the organized, Federally-recognized State militia] as an integral part of the first line of defenses of the United States be maintained and assured at all times. Whenever Congress determines that more units and organizations are needed for the national security than are in the regular components, . . . the . . . National Guard of the United States [reserves components of the US Army/US Air Force as defined in Title 10] . . . or such

---

[3] The text reads: "When not on active duty, members of the Army National Guard of the United States shall be administered, armed, equipped, and trained in their status as members of the Army National Guard."

parts of them as are needed . . . shall be ordered to Federal active duty . . . [a/k/a Federal service]." 32 U.S.C. § 102.

To help achieve this goal – maintaining the State National Guard as a ready force trained to Federal standards so it can perform Federal missions, if needed – Congress has conferred Federal reemployment rights protection on National Guard personnel when are they are performing training or duty under any provision of Title 32. Exhibit 1, Declaration of Colonel Roth. As part of the all-volunteer U.S. Military, the State National Guard would have a very difficult time recruiting and retaining personnel if Congress denied it USERRA protection - it would be totally dependent on State laws, which vary considerably. Also, USERRA coverage of the National Guard levels the playing field with the other reserve components – the US Army/Air Force/Navy/Marine Corps reserves – when they do their training. Same protections are available for the National Guard when performing Federally authorized service, *i.e.*, Title 32, training or other duty. Again, Title 32 clearly authorizes "under regulations prescribed by the [United States] Secretary of Defense" for National Guard personnel "to be ordered to perform full-time National Guard duty under section 502(f) . . . for the purpose of carrying out drug interdiction and counter-drug activities." 32 U.S.C. § 112(b)(1). Section 112(b)(1) provides that Plaintiff's FTNGD-CD is proscribed by federal authority.

Defendants' erroneously argue that "Section 502(f) simply is the funding mechanism by which the federal government funnels money to states. In other words, the reference to Section 502(f), while literally falling within the legal definition of 'Full-Time National Guard Duty,' simply accommodates the significant qualifier for 'Counterdrug' service that places Plaintiff's National Guard duty under state authority." (Dkt. 43 at 11.) There is absolutely no case law or legal authority for this position, and this position is not only contradicted by the plain language of USERRA that provides that "Full-time National Guard Duty" is protected, as defined in

USERRA's definitions section, but is it also contradicted by the language of 32 U.S.C. § 112 and 32 U.S.C. § 502, entitled "Required drills and field exercises," which specifically provides that it is "under regulations to be prescribed by the Secretary of the Army or the Secretary of the Air Force," and that it may include "[s]upport of operations or missions undertaken by the member's unit at the request of the President or Secretary of Defense." 32 U.S.C. § 502(f)(1), (f)(2)(A). No where in USERRA does there appear a carve out provision that Defendants try to suggest should exist for "except orders under 502(f)," as none exists. Because USERRA specifically protects "Full-time National Guard Duty" 38 U.S.C. § 4303(13), (16), and because Plaintiff was ordered to "Full-time National Guard Duty," this should end the inquiry, but just in case it has not, and to clear up any confusion that Defendants have attempted to create, Plaintiff has specifically pled that his orders were under Federal authority. As such, this should end the inquiry at this stage of the proceedings. To the extent necessary, Plaintiff will retain Military experts to explain and present evidence and opinions that in fact Plaintiff's orders were under Federal authority, and therefore, he is protected by USERRA. As such, Defendants' motion to dismiss Plaintiff's First Amended Complaint must be denied.

### D. *Posse Comitatus Act Does Not Apply to Title 32*

Defendants realizing that their arguments on the Posse Comitatus Act ("PCA"), upon which the Court erroneously relied in dismissing Plaintiff's original Complaint, are completely in error after Plaintiff pointed out in his motion to reconsider that after the terrorist attacks of September 11, 2001, Title 32 was amended to provide that the PCA does not apply (Dkt. 33), Defendants completely change their position as to the application of the PCA, now saying that the "the PCA is a red herring." (Dkt. 43 at 15.) However, in Defendants' first motion to dismiss, Defendants relied heavily on the PCA, arguing that "taking Plaintiffs interpretation of Title 32 to its logical extreme would mean that the federal government likely violated the [PCA] by having Plaintiff

engage in law enforcement activities while allegedly a federalized National Guard member." (Dkt. 24 at 5.) By authorizing the States to place National Guard personnel in full-time National Guard duty under 32 U.S.C. §502(f) to carry out drug interdiction and counter-drug activities, 32 U.S.C. §112(b) ensures that it is absolutely clear that PCA does not restrict the National Guard from carrying out those activities. Exhibit 1, Declaration of Colonel Roth ¶ 9. This Court relied on Defendants' erroneously argument that the PCA applied and was proof that Plaintiff was under state authority, which Defendants must now concede was in error, and at least acknowledge that their prior arguments were a red herring. As set forth above, Defendants' other arguments in the same vane are also a red herring. As such, their motion to dismiss Plaintiff's First Amended Complaint must be denied.

## CONCLUSION

Plaintiff's military orders were under Federal authority, and Plaintiff is protected by USERRA. Defendants cite no case law to the contrary, as none exists, and the plain language of USERRA clearly states that Plaintiff's "Full-time National Guard Duty" is covered and protected under the definitions contained in USERRA. Defendants' motion to dismiss Plaintiff's First Amended Complaint must be denied.

Respectfully submitted,

DAVID MUELLER

*/s/Dana L. Kurtz*

Attorney for Plaintiff

*Electronically filed on July 18, 2018*

Dana L. Kurtz, Esq. (6256245)
KURTZ LAW OFFICES, LTD
32 Blaine Street
Hinsdale, Illinois 60521
Phone: 630.323.9444
Facsimile: 630.604.9444
E-mail: dkurtz@kurtzlaw.us

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies and states that the attached documents were served on the designated attorneys by electronic service via the Court's ECF system on July 18, 2018.

James J. Powers        jpowers@cbslawyers.com
Abigail C. Rogers      arogers@cbslawyers.com


              *s/ Dana L. Kurtz*
              Dana L. Kurtz