IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID MUELLER,<br><br>                    Plaintiff,<br><br>     v.<br><br>CITY OF JOLIET; BRIAN BENTON,<br>in his official and<br>individual capacity as the<br>CHIEF OF POLICE; and EDGAR<br>GREGORY, in his individual<br>capacity,<br><br>                Defendants. | Case No. 17 C 7938<br><br>Judge Harry D. Leinenweber |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff David Mueller ("Mueller"), an employee of the Joliet Police Department at the relevant time, has sued the City of Joliet ("City"), and its Chief of Police Brian Benton and Deputy Chief of Police Edgar Gregory (collectively, "Defendants") for allegedly violating the Uniformed Service Members Employment and Reemployment Act, 38 U.S.C. § 4311 ("USERRA") (Count I), and the Illinois Military Leave of Absence Act, 5 ILCS 325/1 ("IMLAA") (Count II). Defendants moved for summary judgment on both counts [Dkt. No. 108]. For the reasons herein, the Court denies the Motion as to Count I and grants it as to Count II.

## I. <u>BACKGROUND</u>

The Court recites herein those facts relevant to its consideration of Defendants' present motion, and such facts are generally not in dispute unless otherwise indicated. *See* Pl.'s Resp. to DSOF, Dkt. No. 115.

### A. Mueller's Career

Plaintiff David Mueller ("Mueller") was hired as a City of Joliet police officer and subsequently promoted to sergeant. (Defs.' Rule 56.1 Statement of Materials Facts ("DSOF") ¶ 1, Dkt. No. 109.) In August 2015, Mueller enlisted in the National Guard on a part-time basis (DSOF ¶ 16) and thereafter performed service for drills and training on multiple occasions (DSOF ¶¶ 17—19).

In March 2016, Mueller received notice from the National Guard advising him of an opening in the Illinois National Guard Counterdrug Task Force. Mueller applied for the position (DSOF ¶ 21) with the understanding that it would entail full-time work for the National Guard involving approximately 40 hours per week (DSOF ¶ 22) of administrative duties rather than training exercises (DSOF ¶ 23). He was selected for the position, for which he received orders on March 23, 2016, to report for "Full Time National Guard Duty" (DSOF ¶ 24) in Romeoville, Illinois. He did so on May 9, 2016, commencing his full-time position. (DSOF ¶ 26.) The Adjutant General of the Illinois National Guard executed the orders, assigning Mueller to counterdrug

support in accordance with 32 U.S.C. § 112 from May 9, 2016, (DSOF ¶¶ 25—26) through September 30, 2016.

On May 9, Mueller began his position with the Illinois National Guard Counterdrug Task Force. (DSOF ¶ 26.) On August 1, Mueller resigned from his National Guard position and returned to the Joliet Police Department ("JPD"). (*See* DSOF ¶ 46.)

### B. City Decides How to Address Plaintiff's Pay and Benefits While on Leave

When Mueller received these orders, Brian Benton ("Benton") served as the City's Chief of Police (DSOF ¶ 3), Edgar Gregory ("Gregory") served as the City's Deputy Police Chief (DSOF ¶ 4) with the Joliet Police Department ("JPD"), and James Hock ("Hock") served as the City Manager for Joliet (DSOF ¶ 5).

Benton received a copy of Mueller's orders (DSOF ¶ 27). Shortly thereafter, Benton arranged a meeting with Hock. (DSOF ¶¶ 5, 27—28). During the meeting, Hock, Benton, and several other City officials discussed staffing. (DSOF ¶ 29.) Defendants allege but Plaintiffs deny that the group decided to seek legal guidance regarding "what kind of leave would be granted, what compensation, if any would be granted" and subsequently received legal analysis about Plaintiff's eligibility for benefits and pay. (DSOF ¶¶ 30, 34; *see* Pl. Resp. to DSOF ¶¶ 30, 34). In early June 2016, Benton, Hock, and several other City conferred about Plaintiff's eligibility for compensation. (DSOF ¶ 33.)

On June 15, Benton sent an email to Mueller stating, among other things, that Plaintiff would be provided "with an unpaid leave of absence during your National Guard deployment consistent with applicable federal and state law . . .. The City is willing to allow you to utilize any accrued leave time that you have earned pursuant to the 2012-15 Collective Bargaining Agreement between the City of Joliet and the Fraternal Order of Police Labor Council. However, employees in an unpaid leave status do not continue to accrue leave time such as vacation or personal days." (Benton 16.06.15 Email, Dkt. No. 109-1 at 36; *see* DSOF ¶¶ 38—39).

## C. Plaintiff's Pay and Benefits During His Leave of Absence (May 9—July 31, 2016)

Before, during and after Plaintiff's National Guard service, JPD paid Mueller each pay period the gross amount of $4,220.42 and provided his accrual of 13.20 hours of vacation time per month. (*See* DSOF ¶¶ 50—60.) In 2016, personal days did not accrue every month; the City awarded personal days on January 1 of every calendar year. (DSOF ¶ 11.) During the dates of his time with the National Guard, his vacation hours were deducted in twelve-hour intervals ten times, to amount to 120 hours. (Accrual Detail, Malloy Decl. Ex. J, Dkt. No. 111-1 at 216; *see* Pl. Local Rule 56.1(B)(3) Statement of Material Fact ("PSOF") ¶ 29, Dkt. No. 114.)

### D. Plaintiff's Return to City Police Work

At some point in July 2016, Plaintiff decided to seek release from his full-time National Guard duties, which he ended July 31, 2016. (DSOF ¶ 44). On August 1, 2016, Plaintiff returned from leave and began performing work as a Joliet Police Sergeant. (SOF ¶ 46). Plaintiff retired on January 21, 2021. (DSOF ¶ 2).

Mueller sued the City of Joliet, Benton, and Gregory ("Defendants') for violating Uniformed Service Members Employment and Reemployment Act ("USERRA") and the Illinois Military Leave of Absence Act ("IMLAA"), 5 Ill. Comp. Stat. 325/1(a) (2018), repealed by P.A. 100-1101, § 90-5 (eff. Jan. 1, 2019), and replaced by the Illinois Service Member Employment and Reemployment Rights Act, 330 Ill. Comp. Stat. 61/1-1 et seq. (2019). Mueller claimed that Defendants violated both USERRA and IMLAA by failing to provide vacation time accrual and differential pay and forcing him to use vacation time during his full-time position with the National Guard.

## II.  LEGAL STANDARD

Summary judgment is appropriate if the record of a case "show[s] that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323—25 (1986); *see also Mills v. Health Care Serv. Corp.,* 171 F.3d 450, 458 (7th Cir. 1999). Whether a fact is material depends on the underlying substantive law that governs the dispute, and a genuine dispute is one where "the

- 5 -

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Carroll v. Lynch,* 698 F.3d 561, 564 (7th Cir. 2012) (citation omitted). The Court evaluates the record in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. *Burton v. Downey,* 805 F.3d 776, 783 (7th Cir. 2015). If a moving party properly supports their summary judgment motion, the nonmoving party must present admissible evidence showing a genuine issue of material fact, however, a scintilla of evidence is insufficient to meet that burden. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

### III. <u>DISCUSSION</u>

### A. USERRA (Count I)

Section 4311(a) of USERRA states in pertinent part that an individual with "an obligation to perform service in a uniformed service shall not be denied . . . any benefit of employment by an employer on the basis" of his membership in or obligations arising from the uniformed service. 38 U.S.C. § 4311. The statute further provides:

> *a person who is absent from a position of employment by reason of service in the uniformed services shall be . . . entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.*

*Id.* § 4316(b)(1)(B). A "benefit of employment" in turn, is defined as "any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice[.]" 38 U.S.C. § 4303(2); *see Gross v. PPG Indus., Inc.,* 636 F.3d 884, 889 (7th Cir. 2011). This "includes . . . vacations." 20 CFR Part 1002.5 (b). Plaintiff bears the burden to offer sufficient evidence what Plaintiff allegedly lost was a benefit of employment, that Plaintiff was denied it, and that his military service was "a substantial or motivating factor" in the denial of said employment benefit. *See Sandoval v. City of Chicago,* Case No. 07 C 2835, 2008 WL 2743750, *4 (N.D. Ill. June 13, 2008), *aff'd,* 560 F.3d 703 (7th Cir. 2009). Once an employee establishes "that the employer's action was motivated at least in part by the employee's service obligations, . . . the burden shifts to the employer to show that the action would have been taken anyway." *Hackett v. City of S. Bend,* 956 F.3d 504, 508 (7th Cir. 2020).

In Count I, Plaintiff contends that Defendants violated USERRA in three ways while he was while on leave due to his National Guard duty, namely by: refusing to allow Plaintiff to accrue vacation time; failing to pay him differential pay; and effectively compelling him to use his benefit time. Defendants move for summary judgment on this count arguing: Plaintiff accrued benefit time and lost no pay while he was on leave; the City was not required under USERRA to

provide Plaintiff differential pay; and the record evidence does not support a finding that Defendants Benton or Gregory were decision-makers in this matter. Defendants also argue that Plaintiff waived the legal theory of compelled vacation time.

Thus, the Court must determine whether there is a genuine issue of material fact as to whether Plaintiff lost benefits and whether said loss was denied by his employer. If so, the Court must also determine a genuine dispute exists as to whether his military status was a motivating factor, in order for the USERRA claim to stand.

### 1. *Whether Plaintiff Lost Benefits*

#### a. *Accrued Vacation Time*

In his Complaint, Mueller alleges that he did not accrue benefit time while using benefit time. Defendants present evidence in the record to the contrary. Defendants point to Laurie Malloy's Declaration (Dkt. No. 111-1) to support their contention that Mueller did accrue his vacation time of 13.2 hours per month during his full-time stint with the National Guard and did so on the 15th of every month in 2016. (*See* Accrual Detail, Malloy Decl. Ex. J, Dkt. No. 111-1 at 216; *See* DSOF ¶ 50.) Plaintiff's objection is only that the Malloy Declaration should be stricken because Defendants did not list Malloy in the Rule 26(a) disclosures. However, Defendants did state, "all individuals identified by Plaintiff are incorporated herein," and Plaintiff had identified "Laurie Mallory" in an answer to an interrogatory (*see* Pl. Interrogatory Answer no. 14, Reply Ex.

A; *see also* Mueller Dep., Dkt. No. 114-1 at 47). The Court denied the Motion to Strike in May 2023. (Dkt. No. 123.) Having not been presented with evidence in the record to support these allegations in Complaint, the Court considers the Malloy Declaration as fair game. Ultimately, this is a material fact, and there is a dispute. But without any evidence contrary to what Defendants propose, the issue is not genuine.

Therefore, the Court finds no genuine dispute as to whether Mueller accrued vacation time. There is no basis for Plaintiff's argument that loss of the accrual of vacation time, then, was a lost benefit.

### b. Full Pay and Differential Pay

It remains undisputed that Mueller received paychecks from the City at the same rate of his regular earnings and that he did not specifically receive differential pay. Defendants argue that the City was not required under USERRA to provide Plaintiff differential pay. The Court agrees, and Plaintiff seems to have dropped this argument. Therefore, there is no argument under USERRA that an adverse employment action could be found with a lack of differential

pay. The viability of this argument regarding IMLAA will be addressed, *infra*.

### c. Used Vacation Time

It is undisputed that Mueller used 120 hours of vacation time during the dates of his full-time role with the National Guard. Vacation time is a benefit of employment. 20 CFR Part 1002.5 (b).

What the parties dispute here is whether this was adverse. The parties disagree that it was appropriate for this pay to be accounted for with his earned vacation time. To support their argument, Defendants point to the Benton email facially offering Mueller a choice and argue that a reasonable person could not find this choice to be inappropriate.

To support his argument, Mueller presents allegations that others were compensated better during leave and that he felt threatened. To this, Defendants argue that these allegations constitute inadmissible hearsay. Defendants bore the burden of explaining their objection. *See Torry v. City of Chicago,* 932 F.3d 579, 585 (7th Cir. 2019) ("dispensing with" underdeveloped argument failing to explain why the statement was offered for the truth of the matter asserted); *accord McCormick v. Goebel,* 2023 WL 1815937, at *5 (N.D. Ind. Feb. 7, 2023) ("The Court is not obligated to address individually these boilerplate hearsay challenges."). The Court will not make the parties' arguments for them but does anticipate admissibility via hearsay exemptions to some of the

proffered evidence at issue. It will, of course, be up to the Plaintiff to admit this evidence properly for a factfinder. The Court will not consider at this time the statements made by Mueller about what his colleagues told him when Plaintiff failed to mitigate or respond to very foreseeable hearsay objections, but these statements are not necessary to find the loss of vacation time adverse.

Informed by the evidence on the record and their own experiences, a reasonable factfinder could find the use of vacation time to be a materially adverse employment action. Although he was compensated monetarily for these hours, the time itself is irreplaceable. USERRA provides leave without pay during military service but leave without pay for another vacation once his vacation bank is empty is not protected.

Thus, the Court finds a genuine issue of material fact as to whether Defendants compelled Mueller to use his vacation time, and if using vacation time was a lost benefit.

### d. Greater Benefits If Anything

Finally, Defendants argue that Plaintiff cannot establish discrimination under USERRA because IMLAA and USERRA provide military personnel with greater benefits than nonmilitary personnel. Even if IMLAA ultimately did not apply here, discussed *infra*, the Police Department may have acted cautiously as if it did in granting him more options than they would other employees. If anything, Defendant's theory goes, Mueller got the same but not worse benefits

than other employees by using his vacation time when he was out of the office on his own volition. Defendants cite the explanation in *Crews v. City of Mt. Vernon,* 567 F.3d 860, 866 (7th Cir. 2009), "the statute reaches only discriminatory employment actions that provide military employees with fewer benefits."

The Court disagrees that awareness of IMLAA, or even the statute itself, rendered USERRA redundant, per se. Of course, "State law can grant more rights than federal law." *Heckenbach v. Bloomingdale Fire Prot. Dist.,* 2020 WL 5763600, at *7 (N.D. Ill. Sept. 28, 2020) (citations and quotation marks omitted) (rejecting claim that employer violated USERRA by denying differential pay under IMLAA), but there is no basis in our precedent to read a statute as superfluous, and it exceeds the power of the judiciary to read a statute designed to protect a class as no longer needed because they have access to rights and benefits through other means.

USERRA allows uniformed service members like Mueller to take leave without pay and maintain reinstatement rights. Instead of leave without pay, Joliet used Mueller's vacation time. Why they chose to do that is for a factfinder. Perhaps Plaintiff genuinely chose this, as Defendants contend. Or perhaps vacation time that he was not able to use as he actually chose was a benefit loss unique to a military individual.

In any event, Defendants' argument – that a USERRA discrimination claim cannot stand because the protected class has

supposedly exclusive access to other, although different, rights –
cannot stand.

## 2. Whether the Loss Was a Denial

The Court now addresses the dispute about whether Mueller was
denied the opportunity to save his vacation time or whether he agreed
to it.

Defendants argue that Plaintiff raises a new argument:
"Plaintiff has raised a new legal theory in his Response Brief that
is essentially absent from his Complaint, by arguing compelled
vacation." (MSJ Reply, Dkt. 125 at 7.) But this theory is not absent
from the Complaint, which alleges, "Plaintiff was forced to choose
between being in an unpaid leave or use his accrued benefit time."
(Compl., Dkt. No. 46 at ¶ 41.) Even if not focused on throughout the
pendency of litigation, considering this legal theory would not cause
unreasonably delay or difficulty for the defense. *See Chessie
Logistics Co. v. Krinos Holdings, Inc.,* 867 F.3d 852, 860 (7th Cir.
2017); *Schmeesv. HC1.COM, Inc.,* 77 F.4th 483, 2023 WL 5028935, at *3
(7th Cir. Aug. 8, 2023). Defendants have had "fair notice," as
demonstrated in deposition questions regarding Mueller's consent to
use his vacation time. (*See* Mueller Dep., Dkt. No. 114-1 at 22.)

There is a dispute here. Plaintiff points to temporal proximity,
payroll inconsistencies, and allegations in the record that
Defendant Gregory expressed his displeasure with Plaintiff's actions
and that Deputy Chief Jenson relayed Defendant Benton's remarks that

Plaintiff "had to use benefit time" for his assignment. (*See* PSOF ¶ 16 (disputed by Reply at 10).) To this, Defendants argue that because any discussion between Jensen and Plaintiff occurred *before* Benton's email, the Benton email controls. In that email, Benton offered Plaintiff a choice, therefore, Defendants' theory goes, the action taken by Plaintiff was indisputably on his own volition.

However, a trier of fact could reasonably find that the email did not cancel out the pressures Plaintiff perceived as forcing him to choose vacation time. Plaintiff explains his theory that "it is a logical conclusion that the City of Joliet used the tactic of having Mueller use his benefit pay, to force him to resign his National Guard deployment and return to full time duty as a Joliet police sergeant." (Response at 5.) The Court agrees that this theory is logical, and it is supported by circumstantial facts on the record indicating that Mueller understood that JPD faced staffing challenges and that colleagues were displeased with his choice. Therefore, the Court finds a genuine issue of fact as to whether Mueller was effectively denied the chance to preserve his vacation time.

Thus, ultimately, there is a genuine dispute of material fact as to whether Mueller was denied an adverse employment action.

### 3. Whether Mueller's Military Service was a Motivating Factor

Having found a genuine dispute about whether Mueller was denied an adverse employment action, the Court turns to whether a genuine dispute exists as to why, specifically whether his military service was a substantial or motivating factor.

In support of its argument that military service was a factor in Defendants' motivation to compel vacation time to account for Mueller's leave, Plaintiff reports in his deposition that Officer Jay Sanders ("Sanders") and Adam Blakely ("Blakely") received different treatment. Defendants first argue that these reports are hearsay. Defendants failed to explain their hearsay objection properly, and the Court anticipates that the purpose of these statements was not necessarily for the truth of the matter asserted. The Court reminds Mueller that he will have to admit such evidence properly to a factfinder.

Next, Defendants argue that Blakeley is an improper comparator because he was in the National Guard. The role of a comparator is not so simple. A comparator of the same protected class could work so long as the reason for leave was different than Mueller's reason. *See Bello,* 151 F.Supp. 3d at 858 (explaining that the issue is whether the department treated this request for leave different than other requests for leave). Moreover, there is evidence in the record of disdain for Mueller given his decision to pursue the Full-Time role with the National Guard while maintaining his position with JPD, for example Gregory's comments that he Mueller's decision to do

so harmed the department. (*See* PSOF ¶¶ 3, 5.) Still, a comparator is not the only way to show that military service was a motivating factor. The fact that other people in military were treated appropriately does not foreclose the theory that an animus towards Mueller's military service was a motivating factor.

In light of the potential evidence that other officers with different reasons for leave received different treatment and colleagues' remarks suggesting that Mueller's decision was harmful to the department, the Court finds a genuine dispute of material fact regarding what role, if any, Mueller's connection to the military played in the decisions made about his benefits.

### 4. *Whether Benton and Gregory were Decision Makers*

Next, the parties dispute the role Benton and Gregory played in the final decision to deny Mueller the benefits he sought. Defendants point to Benton's and Hock's depositions to assert that Hock made the decision and directed Benton to relay it to Mueller via email. (*See* DSOF ¶¶ 35-37.)

As discussed in the Court's second ruling on Defendants' Motion to Dismiss (Dkt. No. 97), Benton and Gregory have authority over other police officers pursuant to state law as incorporated into the City of Joliet's municipal code. (See Dkt. No. 97 at 6.) The parties do not dispute that "Gregory had supervisory authority over everyone below his position" (Dkt. No. 116 at 35.), and that according to Gregory Plaintiff's extended military leave impacted staffing levels

- 16 -

at JPD. The record shows Benton sent the email to Mueller apprising
him of his supposed rights regarding his leave during his full-time
National Guard role and that Gregory participated in the grievance
process. Defendants argue that the fact that the grievance process
happened after the decisions regarding his benefits were made
forecloses any rational argument of causation. However, a reasonable
factfinder could find that Mueller's awareness of Gregory's position
of influence did indeed influence Mueller's perceived choices.
Therefore, there is genuine dispute of fact over Benton and Gregory's
role in determining Mueller's benefits.

Ultimately, because the Court finds genuine disputes of
material facts, the Court declines to enter summary judgment in
Defendants' favor on Mueller's claim of discrimination under USERRA
against the City, Benton, and Gregory.

### B. IMLAA (Count II)

Before its repeal on January 1, 2019, Section 1 of IMLAA
provided in relevant part:

> Any full-time employee of . . . a unit of local
> government . . . who is a member of any reserve component
> of the United States Armed Forces or of any reserve
> component of the Illinois State Militia, shall be
> granted leave from his or her public employment for any
> period actively spent in military service, including:
>
> (1) basic training;
>
> (2) special or advance training . . .;
>
> (3) annual training; and

- 17 -

(4) **any other training or duty required by the United States Armed Forces.**

During these leaves, the employee's seniority and other benefits shall continue to accrue.

. . . During leaves for basic training, for up to 60 days of special or advanced training, and for any **other training or duty required by the United States Armed Forces**, if the employee's daily rate of compensation for military activities is less than his or her daily rate of compensation as a public employee, he or she shall receive his or her regular compensation as a public employee minus the amount of his or her base pay for military activities.

5 Ill. Comp. Stat. 325/1(a) (repealed Jan. 1, 2019) (emphasis added). The IMLOAA provides that a violation "constitutes a civil rights violation under the Illinois Human Rights Act," ("IHRA"), *id.* § 1.01, and a person may bring a charge under the IHRA before the IDHR, which is vested by statute with the authority to "issue, receive, investigate, conciliate, settle, and dismiss charges" under the IHRA. 775 ILCS 5/7-101(B); *see Bello v. Vill. of Skokie,* 151 F.Supp. 3d 849, 867 (N.D. Ill. 2015).

In Count II, Plaintiff contends that Defendants violated IMLAA in three ways while he was on leave due to his National Guard duty, namely by: refusing to allow Plaintiff to accrue vacation time; failing to allow Plaintiff to accrue personal days; and failing to pay him differential pay. Defendants argue for summary judgment on Mueller's IMLAA claim on grounds that as a matter of law that they were not required to provide differential pay or additional benefits, and that as matter of fact that they complied.

Defendants argue that Plaintiff's duty was not "required by the U.S. Armed Forces," as required for protection as to duties under IMLAA Section 1(a). It is undisputed that his work was not training, to which Section 1(1)(1—3) pertain. Defendants argue that "the March 23, 2016 order was issued by the Illinois Department of Military Affairs under the signature of the Illinois Adjutant General (SOF ¶ 25) and there is no evidence that a U.S. Armed Forces representative sought to compel Plaintiff to perform drug interdiction work as an intelligence analyst." (MTD at 13.) Plaintiff retorts that the orders list federal law, 32 U.S.C. §§ 112 and 502(F), as the authority by which states can require individuals to report to act.

The arguments conjure a sense of déjà vu, but this is actually the Court's first time addressing this argument. The Seventh Circuit clarified that USERRA applies Mueller's case and generally to National Guard orders issued by states, but it did not address IMLAA's applicability. *Mueller v. City of Joliet,* 943 F.3d 834, 837 (7th Cir. 2019). The Seventh Circuit explained, "the language of USERRA does not limit protection to those in 'Federal service' like the Army or Navy but to those in 'service in a uniformed service,' which explicitly includes Title 32 full-time National Guard duty." *Mueller,* 943 F.3d at 837. Defendants assert that IMLAA's "required by the United States Armed Forces" language is a more exacting standard than USERRA's "uniformed services," §§ 4311, 4316. (*See* MSJ at 12, Dkt. No. 110 ("unique definition of 'uniformed services'")).

- 19 -

Defendants ask this Court to defer to the Illinois Department of Human Rights, which determined that Mueller's deployment did not warrant protection by the IMLAA "because it was not for training or part of duties for The United States Armed Forces." (IDHR Notice of Dismissal, Benton Decl. Ex. A; Dkt. No. 111-1 at 70; *see* DSOF ¶ 64). Plaintiff argues that the IDHR was not privy to all relevant facts and thus its determination should be ignored. Plaintiff appears to argue that IDHR's decision was not an interpretation of state law but a factual determination. In *Bello v. Vill. of Skokie,* 151 F.Supp. 3d 849, 867 (N.D. Ill. 2015), Judge Kennelly explained, "the IHRA specifically permits a party whose charge is dismissed to file suit in court, which makes it highly unlikely that the Illinois legislature intended for courts to defer to the IDHR's resolution of a charge." As Plaintiff points out, the IDHR process does not involve the type of discovery accessible through the courts. Thus, this rationale is indeed rational for cases IDHR closes due to insufficient facts, such as the issue discussed *Bello*, where "the IDHR's decision in Bello's administrative action, however, did not offer the agency's interpretation of the statute." *Id.* However, this idea remains less applicable to cases IDHR closes based on a matter of law when the IDHR would reasonably expect a Court to have access to the same legal resources and arrive at the same conclusion.

If the issue of whether Meueller's work with the Illinois National Guard Counterdrug Task Force between May through July 2016

was "required by the United States Armed Forces" were a fact question, rather than a legal question, Mueller would still have a hard time prevailing. Although once Plaintiff accepted the job, he may well have been required to perform the job duties, he did resign his post that was ordered from May 9, 2016, through September 30, 2016, less than halfway through. And it is undisputed that he was not required to perform the job. But the Court sees the issue of statutory interpretation as a legal question, comparing it to the interpretation of USERRA that the Seventh Circuit recently clarified.

A state administrative agency's interpretation of the applicability of state law remains more persuasive here. That said, Defendants' cited authorities, *U.S. Fire Ins. Co. v. Barker Car Rental,* 132 F.3d 1153, 1156 (7th Cir. 1997) ("in ascertaining the meaning of [an Illinois statute], we must apply the same rules of statutory construction that the Supreme Court of Illinois would apply if it were faced with the same task"), and *People ex rel. Birkett v. City of Chicago,* 779 N.E.2d 875, 881 (Ill. 2002) ("A court will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with administering and enforcing that statute."), are not as on point as they hope. Out of caution, the Court will conduct its own analysis, guided by the precedential and persuasive resources we have, while acknowledging the sensitivity in interpreting a state law and particularly one that has been repealed.

In *Bello,* 151 F.Supp. 3d at 868, Judge Kennelly went on to interpret IMLAA absent an Illinois agency's interpretation of the statute. He explained his interpretation that IMLAA did not did not entitle employees to paid leave for every participation in military training followed three "jurisprudential rules," namely, that a court's primary objective is "to ascertain and give effect to the intention of the legislature," *People ex rel. Sherman v. Cryns,* 786 N.E.2d 139, 150 (Ill. 2003) and its corresponding rule that the language of a statute is "the best indication of [legislative] intent," *Metzger v. DaRosa,* 805 N.E.2d 1165, 1167 (Ill. 2004), and that federal courts answering novel questions of state law should err on the side of restricting liability rather than expanding it, *Pisciotta v. Old Nat'l Bancorp,* 499 F.3d 629, 635–36 (7th Cir. 2007). There, he explained that people are not entitled to receive work credit for time they would not otherwise be working. (*Id.*)

This Court adopts Judge Kennelly's approach to interpreting IMLAA. The provisions of IMLAA as a whole afforded greater protection than its federal counterpart. Moreover, in its *amicus* brief in *Mueller v. City of Joliet,* 943 F.3d 834, 837 (7th Cir. 2019), the State of Illinois expressed its interest in providing such benefits to Illinois workers who work in state efforts with the National Guard. On the other hand, in accordance with the principle elevating the statutory text, the Court understands some language of IMLAA to be more limiting than its federal counterpart. IMLAA specifically

separated "duties" from "training" in that "duties" is always modified by "required by the United States Armed Forces" but "training" is not. Section 1(a). This interpretation of the statute also comports with the third principle to err on the side of restricting liability.

Ultimately, although IMLAA applies to "any reserve component of the United States Armed Forces or of any reserve component of the Illinois State Militia," the duties must be "required by the United States Armed Forces." Section 1(a). Training need not be, but it is undisputed that Mueller was not performing training between May and September 2016. There was federal authority authorizing his duties, but undisputed evidence does not establish that it was required. Absent robust arguments from Plaintiff, the Court is inclined to defer to the state administrative agency interpretation here. The IDHR determined that IMLAA does not apply to Mueller's case. Therefore, the Defendants prevail at summary judgment on the IMLAA claim.

### IV. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment [Dkt. No. 108] is denied as to Count I and granted as to Count II.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: 9/29/2023